[No. 11325-2-II. Division Two. January 29, 1990.]

GREGORY R. WILLS, *as Personal Representative, Appellant,* v. RICHARD A. KIRKPATRICK, ET AL, *Respondents.*

*Lembhard G. Howell,* for appellant.

*Lory R. Lybeck* (*Mildred J. Carmack, Ridgway K. Foley, Jr.,* and *Schwabe, Williamson, Wyatt, Moore & Roberts,* of counsel), for respondents.

PETRICH, J.—Gregory Wills, as personal representative of Cheri Skye's estate, appeals the trial court's summary judgment dismissing his wrongful death claim against Dr. Richard Kirkpatrick based on the limitation of actions for negligence claims against health care providers. RCW 4.16-.350. The issue on appeal is whether the medical malpractice statute of limitations applies to an action of wrongful death based on medical malpractice.[1] We conclude that the medical malpractice statute of limitations does not apply to a wrongful death action based on medical malpractice. Accordingly, we reverse.

Cheri Skye, the decedent, was Dr. Kirkpatrick's patient. Skye underwent a complete physical examination in October 1982, at which time she complained about chest heaviness, chronic intermittent heart palpitations, and an occasional dizzy spell. Dr. Kirkpatrick treated Skye with medication and indicated that if her condition deteriorated he would favor running an echocardiogram to detect valvular heart disease. Echocardiography never took place

---

[1]Although it may be questionable whether Wills argued below that the general statute of limitations, RCW 4.16.080(2), applied rather than RCW 4.16.350, this court nevertheless has inherent authority to consider an issue which the parties have not raised if doing so is necessary to a proper decision. *Falk v. Keene Corp.,* 113 Wn.2d 645, 659, 782 P.2d 974 (1989).

although Skye continued to show the same symptoms. Skye's last visit to Dr. Kirkpatrick was on April 28, 1983; she died on May 16, 1983. An autopsy revealed that her death resulted from a heart condition diagnosed as a mitral valve degeneration and prolapse.

In mid–1985, Gregory Wills, the decedent's son, discovered a letter that Dr. Kirkpatrick had sent to the decedent prior to her death. The letter led Wills to believe that Dr. Kirkpatrick was negligent in the treatment of Skye. Wills then took the legal steps necessary to become appointed as personal representative of his mother's estate.

On May 2, 1986, Wills filed this action against Dr. Kirkpatrick on behalf of the statutory beneficiaries for the wrongful death of his mother, alleging that Dr. Kirkpatrick was negligent in his treatment of her.

The trial court applied the medical malpractice statute of limitations, RCW 4.16.350. Relying on *Bixler v. Bowman,* 94 Wn.2d 146, 614 P.2d 1290 (1980), the trial court measured the 3–year limitation period from April 28, 1983, the date of Skye's last visit with Dr. Kirkpatrick, and concluded that the action was barred by the lapse of time.

■ Actions for wrongful death are strictly statutory. They must be instituted by the personal representative of the deceased and the recovery does not become a part of the decedent's estate. RCW 4.20.010–.020; *Wood v. Dunlop,* 83 Wn.2d 719, 723, 521 P.2d 1177 (1974). A wrongful death action is not a survivorship action on behalf of the decedent's estate; it creates in the beneficiaries of the decedent a new and original cause of action based on the wrongful death itself. *Warner v. McCaughan,* 77 Wn.2d 178, 460 P.2d 272 (1969); *Gray v. Goodson,* 61 Wn.2d 319, 325, 378 P.2d 413 (1963). Washington's wrongful death statute does not contain an express statute of limitations.[2] Rather, wrongful death actions are governed by RCW 4.16, which

---

[2]Most states have a special statutory limitation, independent of the general statute of limitations, within which an action for wrongful death must be brought. *See* S. Speiser, *Recovery for Wrongful Death* § 11:8 (2d ed. 1975).

sets forth the statutes of limitation applicable to different types of actions. *White v. Johns–Manville Corp.,* 103 Wn.2d 344, 348, 693 P.2d 687 (1985). The 3-year provision of RCW 4.16.080(2), measured from the date of death, has been applied to wrongful death claims because such claims qualify as "any other injury to the person or rights of another not hereinafter[3] enumerated." *Dodson v. Continental Can Co.,* 159 Wash. 589, 591–92, 294 P. 265 (1930).

The question we are asked to resolve is whether the medical malpractice statute of limitations, RCW 4.16.350, which measures the period from the act or omission causing the injury, embraces a wrongful death claim based on medical malpractice. If it does not, then the general statute of limitations contained in RCW 4.16.080(2) would apply. The determination of this question is essentially one of statutory construction.

The pertinent provisions of RCW 4.16.350, which were in effect at all times relevant to this action, provided:

> Any civil action for damages for injury occurring as a result of health care which is provided after June 25, 1976 against:
> (1) A person licensed by this state to provide health care or related services, including, but limited to, a physician, . . .
>
> . . . .
> based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission: *Provided,* That the time for commencement of an action is tolled upon proof of fraud, intentional concealment, or the presence of a foreign body not intended to have a therapeutic or diagnostic purpose or effect.

As appears from the statute, claims against health care providers *for damages for injury* as a result of health care

---

[3]Relying somewhat on RCW 4.16.010 (repealed effective 1984), which provided that actions be commenced within specified periods after the cause of action accrued, the *White* court tolled the limitation period of RCW 4.16.080(2) under the discovery rule in a wrongful death alleged to have been caused by exposure to asbestos. *White v. Johns–Manville Corp., supra.*

must be commenced within certain time limits of the act or omission alleged to have caused the injury or condition. The critical question is whether "damages for injury" should be interpreted broadly to apply to injury to statutory beneficiaries in a wrongful death claim or should be limited to injury suffered by the patient.

 The objective of statutory interpretation is to ascertain legislative intent. *Department of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 645 P.2d 1076 (1982). Context and subject matter of legislation must be considered because the intention of the lawmaker is to be determined, if possible, from what the Legislature said. *Hatzenbuhler v. Harrison*, 49 Wn.2d 691, 306 P.2d 745 (1957). An act must be construed as a whole, giving effect to all the language used, considering all provisions in relations to each other and, if possible, harmonizing all to insure proper construction of each provision. *Newschwander v. Board of Trustees of Wash. State Teachers' Retirement Sys.*, 94 Wn.2d 701, 620 P.2d 88 (1980).

The provisions of RCW 4.16.350 which are pertinent to our inquiry were enacted as part of Laws of 1975, 2d Ex. Sess., ch. 56. The chapter consists of 15 sections. It is apparent that the Legislature was dealing with various aspects of *personal injuries* by various claimants. In addition to the section dealing with medical malpractice, the chapter deals with: the elimination of a statement of damages sought in actions for *personal injuries,* § 2 (RCW 4.28.360); the inadmissibility, to prove liability, of the promise, offer or payment of expenses of injury in an action for *personal injuries* based on professional negligence of a health care provider, § 3 (RCW 5.64.010); the requirement that an award for damages in a claim for *personal injuries* of a totally and permanently disabled claimant be in the form of an annuity plan, § 5 (RCW 4.56.240, *repealed by* Laws of 1986, ch. 305, § 802); the requirement, in a claim for failure to obtain an informed consent, that there be proof that the treatment given caused *injury to the*

*patient,* § 10 (RCW 7.70.050); and the allowance of evidence that the *patient has already been compensated for the injury* from any source except assets of the patient or insurance provided by patient's assets, § 13 (RCW 7.70-.080).

■ The entire chapter is primarily concerned with various aspects of claims involving personal injuries of the patient. There is nothing to suggest that the limitation of actions for medical malpractice embraces a claim for wrongful death.

If indeed the medical malpractice statute of limitations applied to wrongful death claims, we would have the situation where such a claim could be barred even before death triggers accrual of the right to bring the action. Such a result seems to us illogical and unjust. It is true that the limited discovery period of 1 year may be added to the limitation of time to bring suit if the cause of the injury is unknown. However, in any event, the Legislature placed an absolute 8–year limitation of action for injuries resulting from medical malpractice.[4]

---

[4]It is obvious from the following exchange that the Legislature intended an absolute cap on medical malpractice claims.

"Mr. Knowles: 'No, the only reason I can give you is the crowded time element we were faced with. We met last Saturday from 8 o'clock until 10 and adopted a surprising number of amendments to this bill, which are essentially the last four. These were things that came up later and they've been agreed to by all parties.'

"Mr. Zimmerman: 'As far as the eight–year statute limitation on exemption to majority, how many people do you feel you are going to be dealing with at that point? Does that really make a major change?'

"Mr. Knowles: 'Under present statute there is no cap, this is in the area of discovery. This is the area where a foreign object will be found in a body after the original statute has run out or radiation or something of that nature. In current law there is no cap and what we're concerned with here is to weigh between about four percent of the cases. We've vacillated between; the House bill a year ago put a cap on of ten years and the Senate bill put a cap on of six years. In committee we've compromised and arrived at eight. It will mean some individuals will come under the discovery of a sponge in the body or something of that nature and may not be able to bring their action because the time will run out on them. On the other hand, it's an expense to the insurance companies to maintain reserves against that contingency, so the question is how long are they going to have to maintain that reserve? I don't have the fear of foreign objects that I once did because we learned that now most hospitals are taking a very careful inventory of

While the Legislature may have the power to enact such a limitation period barring wrongful death claims even before they accrue, it is obvious to us that the Legislature did not do so here. If the Legislature had intended to include wrongful death claims within these limited periods it could have done so by so limiting such actions for damages for injury, *or death,* as a result of health care. It did not do so.

■ We conclude that the 3–year limitation period of RCW 4.16.080(2), measured from the date of death, applies to this claim for wrongful death based on the alleged medical malpractice of Dr. Kirkpatrick. This case was commenced within these time requirements and dismissal therefore was not warranted. In view of our conclusion we need not address the question of how knowledge may be imputed to Wills so as to exhaust the 1–year discovery rule.

Reversed.

ALEXANDER, C.J., and REED, J., concur.

Review denied at 114 Wn.2d 1024 (1990).

everything that goes into that operating room, that it all comes out. So I would say you will take your choice here; we felt eight years was a reasonable time to protect the insurance companies and hopefully not result in too many individuals not getting compensated.'" House Journal, 44th Legislature (1975), at 318.